UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL F. SHEEHAN, as he is ADMINISTRATOR, ELECTRICAL WORKERS' HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' PENSION FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' SUPPLEMENTARY HEALTH AND WELFARE FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' DEFERRED INCOME FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' JOINT APPRENTICESHIP AND TRAINING FUND, LOCAL 103, I.B.E.W.; ELECTRICAL WORKERS' EDUCATIONAL AND CULTURAL FUND; ANTHONY J. SALAMONE, as he is ADMINISTRATOR, NATIONAL ELECTRICAL BENEFIT FUND; and LOCAL 103, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,<br>Plaintiffs<br><br>vs.<br><br>FAR EAST ELECTRICAL, INC.,<br>Defendant<br><br>and<br><br>SOVEREIGN BANK,<br>Trustee | C.A. No. 05-11634 RGS |

## AFFIDAVIT OF RICHARD P. GAMBINO IN SUPPORT OF
## MOTION FOR ENTRY OF DEFAULT JUDGMENT

1. My name is Richard Gambino. I am the Administrator of the Electrical Workers Employee Benefit Funds, Local 103, I.B.E.W.

2. Far East has been signatory to successive collective bargaining agreements with Local 103, I.B.E.W. since on or about February 27, 2002, including the agreement effective from

September 1, 2003 through August 31, 2006 ("Agreement"). A copy of the relevant portions of the 2003-2006 Agreement is attached to the Complaint as Exhibit A.

3. The Agreement obligates Far East to contribute to Plaintiff Funds for every hour worked by its covered employees. Payments must be made by the 15th of the month following the month in which the work is performed.

4. Pursuant to the terms of the Agreement, Far East is also obligated to submit, with the fringe benefit contributions, the dues that it has deducted from its employees' wages. These payments must be submitted with payroll reports, listing the names of the covered employees, the hours worked and the amounts paid.

5. Based on Remittance Reports submitted by Far East, it owes the Funds $4,876.58 in fringe benefit contributions for the months of June, September and October, 2004 and March, 2005, as it underpaid in each of those months.

6. Pursuant to the terms of the Agreement, the Trust Agreements, and Section 4.05 of the Funds' Collection Policy, Far East owes interest at the per month rate of 1.5% of the delinquent contributions. A copy of the Funds' Collection Policy is attached hereto as Exhibit 1. As such, Far East currently owes the Funds $8,119.88 in interest on late-paid and unpaid contributions.

7. The Agreement provides for liquidated damages equal to the amount of the outstanding delinquent contributions owed as of December 1, 2004 multiplied by the percentage used to allocate net investment income to individual accounts under the Electrical Workers Deferred Income Fund for the year ending on November 30. The current percentage is 7.768

percent. Thus, Far East owes liquidated damages in the amount of $378.81.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 15th DAY OF FEBRUARY, 2006.

Richard P. Gambino

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Affidavit has been served by first class mail upon defendant Far East Electrical, Inc. at 10 Haven Lane, Wayland, MA 01778 this 17 day of February, 2006.

Gregory A. Geiman, Esquire

GAG/gag/cts
AKS 3013 04-129/affgambino.doc

ELECTRICAL WORKERS CONSTRUCTION
TRUST FUNDS, LOCAL 103 I.B.E.W.
COLLECTION POLICY

ARTICLE 1

NAME AND PURPOSE

1.01    Name.  This is the Electrical Workers Construction Trust Funds, Local 103 I.B.E.W. Collection Policy.

1.02    Purpose.  The purpose of this Policy is to establish collection procedures to govern administration and collection of Employer contributions owed to the Funds under the Collective Bargaining Agreements, or other agreements, so that all sums due to the Funds are properly and promptly paid, so that Employees are assured of their benefits, and Employers receive consistent treatment with respect to collection of contributions and to comply with ERISA prohibited Transaction Exemption 76-1.

1.03    Application.  The several boards of Trustees of the Funds shall individually adopt, implement and apply the provisions of this Policy; but each such board may, in the interests of economy, act in concert, but not jointly, with any or all other boards for the purposes of implementing and enforcing the provisions of this Collection Policy.

ARTICLE 2

DEFINITIONS

The following words and phrases shall have the meanings specified below, unless a different meaning is plainly required by the context:

2.01    "Funds" shall mean, respectively, each of the following: the Local 103, I.B.E.W. Health Benefit Plan; the Electrical Workers Pension Fund, Local 103, I.B.E.W.; and the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W.; all as referred to in the Collective Bargaining Agreement.  If the trustees of any other funds to which an Employer is obligated to contribute under a Collective Bargaining Agreement adopts this Collection Policy as described in Section 1.03 of this Collection Policy, the rules of this Collection Policy shall apply to such fund notwithstanding that such fund in not described in this Section 2.01.

2.02    "Trustees" mean the Trustees of the Fund or Funds as the context requires.

2.03    "Administrators" mean the duly appointed Administrators of the Fund or Funds if the Administrators hold such positions with more than one Fund.

2.04 "Delinquent Employer" means (a) an Employer from whom the Funds do not receive payment and/or a Report on or before the Due Date; or (b) from whom the Funds receive payment and/or a Report which is, in the opinion of the Administrator, improper or incomplete and which is not corrected by the Employer on or before the Due Date; or (c) who has either failed to make a timely request for an extension, or whose request for an extension has been denied.

2.05 "Employee", "Union" and "Employer" shall be defined for the purposes of this Collection Policy as each term is defined in the Collective Bargaining Agreement. An "Employer" may also include any other person who is obligated to make contributions to the Funds by an agreement other than the Collective Bargaining Agreement, including the Employer's guarantor, surety or other person obligated by law or equity to make contributions owed by the Employer under the Collective Bargaining Agreement.

2.06 "Due Date" means the date on which reports or payments are due in accordance with the provisions of Article 3.

2.07 "Legal Action" means any lawsuit or proceeding of a legal or equitable nature for money damages or other relief, in any court of competent jurisdiction.

2.08 "Written Determination" means a written decision which is entered in the official records of the individual or body making such decision, and which shall set forth the facts and the reasons for such decision.

2.09 "Report" means a full and complete list or other record submitted by the Employer pursuant to the terms of Article 3.

2.10 "Collection Policy" means this instrument, the Electrical Workers Construction Trust Funds, Local 103 I.B.E.W. Collection Policy as it may be from time to time amended. The Collection Policy also constitutes one part of the rules and regulations of the Trustees regarding collections within the meaning of Section 4.10 of the Collective Bargaining Agreement.

2.11 "Collective Bargaining Agreement" means the Agreement and Working Rules governing the Electrical Industry of Greater Boston between Electrical Workers Union Local 103, IBEW of Greater Boston and Electrical Contractors Association of Greater Boston, Inc., Boston Chapter, National Electrical Contractors Association effective September 1, 1997 and as thereafter amended, and any successor agreement; and any other written agreement, and successors thereto between an Employer and the Union, pursuant to which payments are required to be made to the respective Funds.

2.12 "Collection Committee" shall mean a committee to whom the Trustees have delegated or allocated any of their responsibility or authority with respect to administration and collection of Employer contributions owed to the Funds.

## ARTICLE 3

## EMPLOYER OBLIGATIONS: REPORTING AND PAYMENT

3.01 <u>Reporting</u>. On or before the fifteenth day following the expiration of each calendar month (or, if required by the Collective Bargaining Agreement, a "project labor agreement" or any other arrangement whereby an Employer is obligated or required to make weekly payment of contributions to the Fund(s), on or before the Friday of the week following the week in which the hours were worked), (a) each Employer shall submit to the Administrator a Report containing a complete list of its Employees, their identification numbers, and the calendar month; and (b) each Employer for whom no Employees worked during such calendar month shall submit to the Administrator a "No-Workers" Report in such form as the Administrator shall determine. In addition, each Employer shall file with the Administrator such other Reports as the Administrator shall reasonably determine from time to time to be necessary or desirable for the implementation or enforcement of this Collection Policy. The Administrator may return any submitted Report which is not properly completed.

3.02 <u>Payment</u>. On or before the fifteenth day following the expiration of each calendar month (or, if required by the Collective Bargaining Agreement, a "project labor agreement" or any other arrangement whereby an Employer is obligated or required to make weekly payment of contributions to the Fund(s), on or before the Friday of the week following the week in which the hours were worked), and concurrently with the filing of the Report required under Section 3.01, each Employer for whom Employees worked during the respective calendar month shall pay the sums owing to the Funds for such month (or week, if weekly contributions are required) pursuant to the Collective Bargaining Agreement as then in effect.

## ARTICLE 4

## FAILURE TO REPORT OR PAY

4.01 On the twenty-second (22nd) day of the month in which payment is due (or on the 1st business day following the Due Date, in the case of weekly contributions), if no payment has been received, a registered letter shall be sent to the Employer requesting prompt payment and reminding it of interest due of 1.5% per month.

4.02 If no payment is received by the first (1st) day of the month following the month payment is due, the Delinquent Employer is called by phone and informed that, if no payment is received by the fifteenth (15th) day of the month, letters may be sent to Employees in its employ informing any such Employees that their coverage in the Funds may be affected. The Administrator will also refer the case to the Fund Attorney if no payment is received by the fifteenth (15th) day of the month following the month payment is due. The Union, the NEBF, the Electrical Workers Educational and Cultural Fund, Local 103 I.B.E.W.

and NECA may also be notified of the delinquency. In the case of contributions payable weekly rather than monthly, the foregoing rules shall apply except that the Delinquent Employer shall be called by phone if no payment is received by the 3rd business day following the Due Date and, instead of the 15th day of the month, there shall be substituted the 5th business day following the Due Date.

4.03    At the first regularly scheduled Trustees meeting held during the month following the month payment is due and after the Employer is sent a registered letter and the Employees are sent a letter, if no payment is received, the Administrator will notify the Trustees of the delinquency.

4.04    At the next regularly scheduled Trustees meeting, the Joint Conference Committee (J.C.C.), as established by the Collective Bargaining Agreement, shall in addition be petitioned by the Trustees to convene a meeting to collect amounts owed by the Delinquent Employer. If such amount is not forthcoming, the J.C.C. may request that the Collective Bargaining Agreement between the Union and the Delinquent Employer be suspended or terminated. The Trustees may petition that the J.C.C. determine whether the Employer should be required to post a satisfactory bond to insure payments of contributions as set forth in Section 6.2(e) of the Collective Bargaining Agreement.

4.05    Costs and Interest. A Delinquent Employer (or any other person or entity legally obligated for such contributions) shall pay an interest charge of 1.5% per month upon any payment or payments unpaid from the Due Date until payment is made. A Delinquent Employer (or any other person or entity legally obligated for such contributions) shall be liable for all costs of collection of payments, including but not limited to court costs, attorneys fees, and accountants' or auditors' fees. Notwithstanding any provision of the foregoing or any provision in this Collection Policy to the contrary, if an Employer is selected to be audited by the Trustees pursuant to Article 6, the Collective Bargaining Agreement, and/or one or more of the trust agreements of the Funds, and the Employer refuses or otherwise fails to comply with such audit request or requirements, including but not limited to by preventing the auditor access to its offices to review records or other information when requested by such auditor, if during normal business hours after 7 days written prior notice, or failing to provide, at the time designated by such auditor, all information and records (including copies thereof if requested) deemed necessary by such auditor to render an unqualified opinion as to whether the Employer has accurately and fully reported all obligations owed by the Employer to the Funds for the entire period targeted by such audit, then the Employer shall pay to the Fund(s) seeking such audit all costs, court costs, attorneys fees and expenses, expert fees and expenses, and accountants' or auditors' fees and expenses incurred by the Fund(s) in compelling compliance with the auditing provisions of Article 6, the Collective Bargaining Agreement, or the various trust agreements.

4.06    Additional Assessment(s). For each year that a Delinquent Employer is delinquent as of December 1st of a calendar year concerning contributions due prior to such date

to the Electrical Workers Deferred Income Fund, Local 103, I.B.E.W. (the "DIF"), the Delinquent Employer shall pay, in addition to any other amounts that may be owed by the Delinquent Employer, an assessment as liquidated damages equal to the amount of the outstanding delinquent contributions owed as of December 1st of such calendar year multiplied by the percentage used to allocate net investment income to individual accounts under the DIF for the year ending on such November 30th. If the product produced by the foregoing sentence results in a negative number or zero for such year, no assessment shall be made under this section 4.06 to the Delinquent Employer for such year.

## ARTICLE 5

## COMMENCEMENT OF LEGAL PROCEEDINGS

5.01   In accordance with Section 4.9 of the Collective Bargaining Agreement, in any case in which legal proceedings to collect contributions or compel an Employer audit under this Collection Policy is instituted, the Trustees designate (as that word is used in Section 4.9 of the Collective Bargaining Agreement) the Administrator to institute any and all legal proceedings to collect contributions or other sums owed the Funds, and to institute such suit or any other legal or equitable action as the Administrator deems necessary in his sole discretion, as well as engaging Fund counsel to institute such proceedings.

5.02   For purposes of any action taken by the Administrator pursuant to Section 5.01 of this Collection Policy, the Trustees delegate to the Administrator their fiduciary discretion and authority to commence, maintain, prosecute to final judgment and to bind the Funds and the Trustees with respect to said action against any Delinquent Employer (or any other person or entity who may be liable, jointly, severally or otherwise) or any other Employer (in the case of compelling production of records or an audit).

5.03   The Administrator shall request in writing, prior to instituting legal proceedings (unless time constraints make such request impracticable), whether the Trustees of the NEBF wish to join in any legal or other action contemplated by the Administrator.

5.04   <u>Settlements</u>. Notwithstanding any other provision of Article 5, the Administrator shall not settle any action against a Delinquent Employer, or against any other person or entity whom may be liable for such amounts, for less than the full contributions, interest, costs and attorneys' fees, without obtaining the authorization of the Trustees.

## ARTICLE 6

## AUDITING

6.01   To facilitate the Trustees' determination of the accuracy of all Reports and contributions made by Employers and to comply with the Trustees' fiduciary obligation as mandated by

the Employee Retirement Income Security Act of 1974, the Trustees shall have the right, upon seven (7) days prior notice to an Employer by certified mail, to conduct an audit of any and all Employer payroll books and records. Such audits shall be performed by auditors selected by the Trustees. The cost of such audit shall be paid by the Employer, if the audit discloses additional payments to be due exceeding payments actually made by the Employer by ten percent (10%) or more during the period covered by the audit except that if the Employer shall have owed Delinquent Employer payments in excess of $1,000 as of the date of the audit, the Employer shall pay the cost of the audit regardless of any audit disclosure.

## ARTICLE 7

## ADMINISTRATION

7.01   General Administration. The responsibility for the general administration of this Collection Policy shall be placed in the Trustees, acting in accordance with the provisions of the Declaration of Trust creating the Fund or Funds. In furtherance and not in limitation of such powers, the Trustees shall also have the power to make Written Determinations (a) to suspend, withhold or end No-Report Inquiries; (b) to compromise or settle amounts due to the Funds pursuant to the terms of the Collective Bargaining Agreements; (c) to compromise or settle Legal Actions; (d) to request the Union to withhold, suspend or end the removal of Employees; and (e) to institute Legal Action in accordance with the provisions of Article 5. For this purpose, the Written Determinations made by the Collection Committee shall be deemed to have been made by the Trustees -- unless or until revoked or revised by the Trustees.

7.02   Administrator's Duties and Collection Policy Interpretation. As regards all action to be taken pursuant to this Collection Policy, the Administrator shall be subject to the direction of the Trustees, except as provided in Article 5, and, to the extent delegated by the Trustees, the Collection Committee. The Trustees shall have full discretionary authority to construe and interpret the provisions of this Collection Policy, including ambiguous or disputed terms and meanings, and their interpretation shall be binding. As to all circumstances not specifically provided for herein, the procedures established by the Trustees and the interpretations of the provisions of this Collection Policy shall be as binding as if such procedures and interpretations were set forth with particularity herein.

7.03   Uniform Actions. Any discretionary actions to be taken under this Collection Policy by the Trustees, the Administrator or Collection Committee shall be uniformly applicable to all Employers similarly situated.

## ARTICLE 8

## AMENDMENT

8.01 <u>Trustees' Powers</u>. In addition to any express or implied power stated herein, the Trustees shall have the power to amend this Collection Policy in whole or in part, at any time and from time to time, by a vote duly recorded.

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.01 <u>Certification</u>. Two times each year the Union shall certify to the Administrator a complete list of Employers, as defined herein; and the Union shall, within ten (10) days of a person, corporation or other entity becoming an Employer, advise the Administrator of that fact.

9.02 Nothing contained in this Collection Policy shall be construed as creating any enforceable right in behalf of any Employer, Employee, Union or any other person against the Trustees, the Administrator, the Collection Committee, or the Funds. Nothing contained in this Collection Policy shall be construed to relieve any Employer of any obligation to contribute to the Funds as specified in the Collective Bargaining Agreement or to comply with any other provision of such Collective Bargaining Agreement. The failure of the Trustees, the Administrator or the Collection Committee to follow any of the procedures set forth in this Collection Policy shall not be construed as relieving any Employer (or any other person or entity) from any of its obligations under the Collective Bargaining Agreement, or as limiting the legal or equitable rights of the Trustees, the Administrator or the Collection Committee in enforcing such obligation.

IN WITNESS WHEREOF, the undersigned Trustees (as Trustees and not individually) have adopted and executed this amended policy as of this 17th day of November, 2003.

| EMPLOYER TRUSTEES: | UNION TRUSTEES |
|---|---|
| David MacKay | John Dumas |
| John A. Penney | Chuck Monahan |
| William Seaver | Michael Monahan |